# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| **Fabas Consulting Int'l, Inc.,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**Jet Midwest, Inc.,** )<br>)<br>**Defendants.** ) | **Civil Action Number<br>14-00907-CV-W-JTM** |

## ORDER

On October 17, 2014, plaintiff Fabas Consulting International, Inc. ("Fabas") instituted the present federal litigation against defendant Jet Midwest, Inc. ("Jet"). According to the COMPLAINT, Fabas, a Florida corporation, is in the business of dealing in new and used commercial aircraft parts for resale and lease to scheduled and regional commercial airlines in Latin America. Conversely, Jet is a supplier of used commercial aircraft parts and components, including aircraft engines, landing gear, wheels, brakes, auxiliary power units, windshields and thrust reversers. In May of 2014, Fabas paid $150,000 for an auxiliary power unit[1] for one of its customers in Mexico. The COMPLAINT alleges that the auxiliary power unit delivered to Mexico "was unserviceable and otherwise defective due to extensive contamination with sulfation, oxide, fungus and corrosion, and that the [auxiliary power unit] otherwise failed to meet the requirements of [Aviation Suppliers Association Quality System Standard] ASA100 and [Federal Aviation Administration Advisory Circular] FAA AC005." Consequently, Fabas brought this suit against Jet alleging:

---

[1] Essentially a used airplane engine.

(a) fraudulent misrepresentation,

(b) negligent misrepresentation,

(c) breach of contract, and

(d) breach of the Florida Deceptive and Unfair Trade Practices Act [FLA. STAT. §§ 501.201, *et seq.*].

Presently pending before the Court is Jet's MOTION TO DISMISS [Doc. 10], wherein Jet seeks dismissal under FED. R. CIV. P. 12(b)(6) of Fabas' two misrepresentation claims as well as the claim for a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). For the reasons set out herein, the motion is granted.

With regard to some misrepresentation claims, Missouri[2] law provides that the "economic loss doctrine" prohibits a plaintiff from seeking to recover in tort for economic losses that are contractual in nature. *Captiva Lake Investments, LLC v. Ameristructure, Inc.*, 436 S.W.3d 619, 628 (Mo. App. [E.D.] 2014). Accordingly, in most contract cases:

> Recovery in tort for pure economic damages [is] limited to cases where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence.

*Id.* Jet argues that this Missouri economic loss doctrine bars Fabas' misrepresentation claims – whether based on negligence or based on fraud. The Court agrees.

---

[2] As discussed *infra* there is a choice of law dispute between the parties. With regard to the analysis of the misrepresentation claims, however, both parties cite to only Missouri cases and neither party has noted any conflict between Florida and Missouri law on negligent misrepresentation, fraudulent misrepresentation, or application of the "economic loss" doctrine to either theory. In general, the Court would note that, as in Missouri, in Florida "[m]isrepresentations relating to the breaching party's performance of a contract do not give rise to an independent cause of action in tort, because such misrepresentations are interwoven and indistinct from the heart of the contractual agreement." *Wadlington v. Continental Medical Services, Inc.*, 728 So. 2d 352, 353 (Fla. App. [4th Dist.] 1999). The Florida "economic rule" also extends to cases where an "alleged fraudulent misrepresentation is inseparable from the essence of the parties' agreement." *Id.*

Even a cursory reading of the COMPLAINT discloses that Fabas is seeking to recover in tort for economic losses that are contractual in nature. The fact that Fabas also alleges fraud does not change this conclusion. As explained by one Missouri court:

> Two critical factors in examining whether a fraud claim is independent of a contract claim under the economic loss doctrine are (1) whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract, and (2) whether the plaintiff suffered additional damages outside the contract as a result of the alleged fraud.

*Compass Bank v. Eager Road Associates, LLC*, 922 F.Supp.2d 818, 827 (E.D. Mo. 2013). In this case, in its COMPLAINT, Fabas has directly plead:

> <u>In connection with this offer to sell</u>, [Jet] represented to [Fabas] that the [auxiliary power unit] had been fully and properly inspected and was fully compliant with the requirements of [Aviation Suppliers Association Quality System Standard] ASA100 and [Federal Aviation Administration Advisory Circular] FAA AC0056.

Accordingly, in support of a claim of <u>breach of contract</u>, Fabas then logically pleads that Jet "breached the parties' agreement for the purchase and sale of the [auxiliary power unit] by providing a defective unit and by failing and refusing to refund the moneys paid by [Fabas] for the purpose and shipment of the [unit]." Similarly, in asserting its claim for <u>misrepresentation</u> (both negligent and fraudulent), Fabas alleges that Jet:

> made false statements of material fact to plaintiff, to wit: (1) that the APU had been fully and properly inspected; (2) that the APU was fully compliant with the requirements of [Aviation Suppliers Association Quality System Standard] ASA100 and (3) that the APU was fully compliant and by failing and refusing to refund the moneys paid by plaintiffs for the purchase and shipment of the [unit].

Under these facts, the Court concludes that the "economic loss rule" bars Fabas' claims of both fraudulent misrepresentation and negligent misrepresentation.

3

As previously noted, the first issue to be determined in addressing Fabas' FDUTPA claim is what substantive law applies. In this case, Fabas argues that Florida law should be applied while Jet argues for the application of Missouri law. Neither party argues for the application of Mexican law. Prior to engaging in any choice-of-law analysis, however, a trial court "must first determine whether a conflict exists" between the competing states. *Prudential Insurance Co. of America v. Kamrath,* 475 F.3d 920, 924 (8th Cir. 2007). The Court concludes that such a conflict exists in this case with regard to the scope and application of consumer protection statutes in Florida and Missouri granting a private right of action.

In 1973, Florida adopted the FDUTPA, modeling the Act on the Federal Trade Commission Act, 15 U.S.C. § 45. R. Tennyson, *The Deceptive and Unfair Trade Practices Act: A New Approach to Trade Regulation in Florida*, 2 FLA. ST. U. L. REV. 223 (Spring 1974). As originally enacted and subsequently applied, the FDUTPA created a private right of action for aggrieved "consumer[s] who ha[d] suffered a loss as a result of a violation" of the Act. FLA. STAT. § 501.211(2) (1973). Subsequently, however, some uncertainty arose as to whether the FDUTPA applied to business-against-business-claims. *See*, *e.g.*, *Warren Technology, Inc. v. Hines Interests Ltd. Partnership*, 733 So. 2d 1146, 1147 (Fla. App. [3d Dist.] 1999). As a result, in 2001, Florida amended the FDUTPA "to authorize any person or entity who suffered a loss as a result of an unfair or deceptive trade practice or act to bring a suit for damages." *Kelly v. Palmer, Reifler, & Associates, P.A.*, 681 F. Supp. 2d 1356, 1372 (S.D. Fla. 2010).[3] Subsequently "courts have reasoned that this [2001] amendment 'demonstrate[d] an intent to allow a broader

---

[3] Accordingly, a private party claim for damages under the FDUTPA has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *North American Clearing, Inc. v. Brokerage Computer Systems, Inc.*, 666 F. Supp. 2d 1299, 1310 (M.D. Fla. 2009) (*quoting Rollins, Inc. v. Butland,* 951 So.2d 860, 869 (Fla. App. [2d Dist.] 2006)).

4

base of complainants . . . to seek damages' under FDUTPA." *Id.* (*quoting in part*, *Niles Audio Corp. v. OEM Sys. Co., Inc.,* 174 F.Supp.2d 1315, 1320 (S.D. Fla. 2001)). More to the point for purposes of this case:

> With these amendments, the Florida legislature adopted the case precedent authorizing a business entity, regardless of its status in the transaction, to sue for damages from unfair and deceptive trade practices by another business.

Michael Flynn & Karen Slater, *All We Are Saying Is Give Business A Chance: The Application of State UDAP Statutes to Business-to-Business Transactions*, 15 LOY. CONSUMER L. REV. 81, 97 (2003).

In 1967, Missouri too adopted a state-based consumer protection law, the Missouri Merchandising Practices Act ("MMPA"), to protect "consumers by expanding the common law definition of fraud 'to preserve fundamental honesty, fair play and right dealings in public transactions.'" *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 414 (Mo. 2014) (*en banc*) (*quoting*, *in part*, *State ex rel. Danforth v. Independence Dodge, Inc.,* 494 S.W.2d 362, 368 (Mo. App. [K.C.] 1973). As explained by the Missouri Supreme Court:

> [The MMPA] makes the "act, use or employment by any person" of any unfair or deceptive practice done "in connection with the sale or advertisement of any merchandise" unlawful. The use of an unlawful practice is a violation of the MMPA "whether committed before, during or after the sale," so long as it was made "in connection with" the sale.

*Conway*, 438 S.W.3d at 414 (*quoting*, *in part*, MO. REV. STAT. § 407.020.1). The Missouri enactment also provides for a private right of action. *Id.* Under the MMPA, however, the private right of action was and is explicitly limited by the legislature:

> Any person who purchases or leases merchandise <u>primarily for personal, family or household purposes</u> and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act

5

> or practice declared unlawful by section 407.020, may bring a
> private civil action in either the circuit court of the county in which
> the seller or lessor resides or in which the transaction complained
> of took place, to recover actual damages.

MO. ANN. STAT. § 407.025. [4] At least thirteen other jurisdictions have likewise limited their respective consumer protection private rights of action to "to a person or a consumer who purchases or leases goods for personal, family, or household use." *All We Are Saying*, at 87 (listing jurisdictions). In those states and "[u]nder these types of statutes, a business entity is essentially unable to sue another business for an unfair or deceptive trade practice." *Id.* at 87-88. This narrower focus represents an intentional policy decision by the Missouri legislature:

> <u>Chapter 407 is designed to regulate the marketplace to the advantage of those traditionally thought to have unequal bargaining power as well as those who may fall victim to unfair business practices [and was] enacted [as] paternalistic legislation designed to protect those that could not otherwise protect themselves</u>. [T]he very fact that this legislation is paternalistic in nature indicates that it is fundamental policy: "a fundamental policy may be embodied in a statute which [] is designed to protect a person against the oppressive use of superior bargaining power."

*High Life Sales Co. Brown-Forman Corp.*, 823 S.W.2d 493, 498 (Mo. 1992) (*en banc*) (*quoting, in part*, RESTATEMENT (SECOND) OF CONFLICTS § 187, comment g). *See also Electr. & Magneto Serv. Co. Inc. v. AMBAC Int'l Corp.*, 941 F.2d 660, 664 (8th Cir. 1991), *abrogated on other*

---

[4] Thus, under the MMPA, a plaintiff pursuing a private action for damages must establish that it:

(1) purchased merchandise from defendant;

(2) for personal, family, or household purposes;

(3) suffered an ascertainable loss of money or property;

(4) as a result of a deceptive act or unfair practice.

*Kerr v. Vatterott Educ. Centers, Inc.*, 439 S.W.3d 802, 809 (Mo. App. [W.D.] 2014).

*grounds by Baxter Int'l, Inc. v. Morris*, 976 F.2d 1189 (8th Cir. 1992) ("The Missouri statutes . . . relating to merchandising and trade practices are obviously a declaration of state policy.")

In this case, if Florida law applies, then Fabas may pursue a FDUTPA claim against Jet. Conversely, if Missouri law applies then the Florida statute has no applicability and, moreover, Fabas could not amend to add a claim under the MMPA since the transaction at issue herein did not involve a merchandise purchase for personal, family, or household purposes.

Inasmuch as Fabas has brought this action under the Court's diversity jurisdiction, the Court utilizes the choice-of-law rules for Missouri. *Brown v. Home Insurance Co.,* 176 F.3d 1102, 1105 (8th Cir. 1999) (indicating a federal court sitting in diversity applies the forum state's choice-of-law principles). To that end, Missouri has adopted and follows the "most significant relationship" test from the RESTATEMENT (SECOND) OF CONFLICTS OF LAWS for resolving choice-of-law questions in both tort actions and contract actions.[5] *Thompson by Thompson v. Crawford,* 833 S.W.2d 868, 870 (Mo. 1992) (*en banc*). Under Section 145 of the RESTATEMENT, the factors to be considered in tort actions are:

(1) the place where the injury occurred,

(2) the place where the conduct causing the injury occurred,

(3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(4) the place where any relationship between the parties is centered.

*Id.* After a court identifies the type and number of contacts under Section 145, Missouri law requires those contacts to be considered under the perspective of the choice-of-law principles set

---

[5] Due to the unique nature of state consumer protection laws, the Court will consider the choice-of-law analysis under both tort and contract.

7

forth in Section 6(2) of the RESTATEMENT. *Natalini v. Little,* 185 S.W.3d 239, 251 (Mo. App. [S.D.] 2006).

Somewhat similarly in contract actions, to resolve a contract claim where an underlying contract is silent on choice of law, Section 188(2) of the RESTATEMENT provides that the following factors should be considered:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Birnstill v. Home Savings of America*, 907 F.2d 795, 797 (8th Cir. 1990). Under Missouri law, regardless of the underlying nature of the action and the RESTATEMENT section at issue, it is not the number of contacts with a particular state that is crucial to the analysis but the quality of these contacts. *Nelson v. Hall,* 684 S.W.2d 350, 359 (Mo. App. [W.D.] 1984).

In this case, the Court concludes that both Florida and Missouri have similar contacts. Fabas is domiciled in Florida, Jet in Missouri. The contract between the two parties arose out of an email sent by Jet from Missouri to Fabas in Florida. After a deal had been struck, Fabas wired money to Jet's bank account in Kansas. As previously noted, Jet then shipped the subject auxiliary power unit to Mexico. Simply put, the Court does not find that any one jurisdiction predominates in an analysis of significant contacts.

The law for "breaking a tie" in such cases is not without its murky uncertainties in the case law. There is some precedent for concluding that Fabas – having chosen a Missouri forum

8

– must demonstrate that another jurisdiction has more significant contacts and, in the absence of such predominance, the law of the forum should apply. As noted by one court:

> Significant is the fact that [a particular state] is the state of the forum. If the forum state is concerned, it will not favor the application of a rule repugnant to its own policies, and the law of the forum will presumptively apply, unless it becomes clear that non-forum incidents are of greater significance.

*Southern Pacific Transportation Co. v. United States*, 462 F.Supp. 1227, 1240 (E.D. Cal. 1978) (*citing Alaska Packers Ass'n v. Industrial Acc. Comm.*, 294 U.S. 532, 547, 55 S.Ct. 518, 523 (1935)). Under this analysis, obviously, Missouri law would apply.

There is also some case law in Missouri suggesting that where the RESTATEMENT factors "disclose[] significant contacts with two or more states, each of which has a legitimate local interest in the particular issue in contest," then a court should employ the "doctrine of comparative impairment." *Hicks v. Graves Truck Lines, Inc.*, 707 S.W.2d 439, 444 (Mo. App. [W.D.] 1986). In this case, the Court concludes that Missouri has demonstrated a strong governmental interest in limiting its consumer protection laws to situations and parties involving inherently unequal bargaining power. In transactions where the parties are on a more equal footing (as in this case), Missouri has evinced a clear governmental interest in not allowing an additional[6] statutory remedy and thereby offering some protection from litigation for Missouri businesses engaged in "same footing" transactions with other businesses.

Under the comparative impairment approach, the Court finds that Missouri has a stronger governmental interest than Florida and that Missouri's interests would be impaired by the application of Florida law in this case. Thus, under this analysis as well, Missouri law would

---

[6] Every state, including Missouri, obviously allows a party – including a sophisticated business – to sue for breach of contract.

9

apply. Consequently, the Court will apply Missouri substantive law and dismiss Fabas' FDUTPA claim.

For the foregoing reasons, it is

**ORDERED** that Jet's MOTION TO DISMISS [Doc. 10], filed December 8, 2014 is **GRANTED**. Accordingly, Counts One, Two, and Four of plaintiff's COMPLAINT are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

> */s/ John T. Maughmer*
> **John T. Maughmer**
> **United States Magistrate Judge**