## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

| | |
|---|---|
| Fabas Consulting Int'l, Inc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action Number |
| v. | ) 14-00907-CV-W-JTM |
| | ) |
| Jet Midwest, Inc., | ) |
| | ) |
| Defendants. | ) |

## ORDER

On October 17, 2014, plaintiff Fabas Consulting International, Inc. ("Fabas") filed the present federal litigation against defendant Jet Midwest, Inc. ("Jet Midwest"). According to the COMPLAINT, Fabas, a Florida corporation, is in the business of dealing in new and used commercial aircraft parts for resale and lease to scheduled and regional commercial airlines in Latin America. Conversely, Jet Midwest is a supplier of used commercial aircraft parts and components, including aircraft engines, landing gear, wheels, brakes, auxiliary power units, windshields and thrust reversers. In May of 2014, Fabas paid $150,000 for an auxiliary power unit[1] for one of its customers in Mexico. The COMPLAINT alleges that the auxiliary power unit delivered to Mexico "was unserviceable and otherwise defective due to extensive contamination with sulfation, oxide, fungus and corrosion, and that the [auxiliary power unit] otherwise failed to meet the requirements of [Aviation Suppliers Association Quality System Standard] ASA100 and [Federal Aviation Administration Advisory Circular] FAA AC005." Consequently, Fabas brought this suit against Jet Midwest alleging:

---

[1] Essentially a used airplane engine.

> (a) fraudulent misrepresentation,
>
> (b) negligent misrepresentation,
>
> (c) breach of contract, and
>
> (d) breach of the Florida Deceptive and Unfair Trade Practices Act [FLA. STAT. §§ 501.201, *et seq.*].

In a prior order, the Court dismissed Fabas' two misrepresentation claims as well as the claim for a violation of the Florida Deceptive and Unfair Trade Practices Act. Accordingly, Fabas' breach of contract claim is the only viable claim remaining in this case.

Following the completion of discovery and with trial approaching, the parties have filed motions for summary judgment with the Court. Specifically, Fabas seeks summary judgment in its favor on its remaining breach of contract claim [Doc. 58], while Jet Midwest seeks partial summary judgment as to any claim that Fabas may assert for lost profits [Doc. 62]. The Court will address each motion in turn.

The underpinnings of Fabas' motion for summary judgment are both simple and straightforward:

> [T]he parties entered into a valid contract under which Fabas was required to pay the sum of $150,020.00 to [Jet] for the purchase of a working auxiliary power unit. Fabas complied with its obligation to pay under the contract and paid [Jet Midwest] in full. However, [Jet] failed to deliver a working [auxiliary power unit] to Fabas.

Jet Midwest does not dispute those basic facts, but notes that following the above-described events "Fabas and Jet Midwest subsequently agreed Fabas would return the [auxiliary power unit] in exchange for a full refund rather than for in-house credit as provided in Jet Midwest's standard return policy."

Summary judgment in favor of a plaintiff is "rare." *Doud v. Toy Box Development Co., LLC*, 2014 WL 11309685, op. at *17 (S.D. Iowa Mar. 31, 2014). Nonetheless, the legal standard under Rule 56 does not distinguish between plaintiffs and defendants:

> A <u>party</u> may move for summary judgment, identifying each <u>claim</u> or defense – or the part of each <u>claim</u> or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a) (*emphasis added*). In this case, the Court concludes that Fabas has adequately and sufficiently established that there are no genuine disputes as to the material facts showing: (1) the existence and terms of a contract; (2) that Fabas performed or tendered performance pursuant to the contract; (3) breach of the contract by Jet Midwest. These are three of the four elements for a breach of contract claim under Missouri law. *Keveney v. Missouri Military Academy,* 304 S.W.3d 98, 104 (Mo. 2010) (*en banc*).

The fourth element is a showing that "damages [were] suffered by the plaintiff." *Id*. Essentially, Jet Midwest's argument is that genuine disputes exist between the parties about the amount of damages sustained and recoverable by Fabas. The Court agrees that such disputes exist, but concludes that such a finding does not preclude summary judgment. A breach of contract claim only requires proof that damages were suffered, not the value of such damages. Thus, in *Monarch Fire Protection District of St. Louis County, Missouri v. Freedom Consulting & Auditing Services, Inc.*, 678 F. Supp. 2d 927 (E.D. Mo. 2009), *aff'd,* 644 F.3d 633 (8th Cir. 2011), the district court could find disputes as to the amount of damages sustained by a plaintiff, but still grant summary judgment on the plaintiff's breach of contract claim, noting:

> The [breach of contract] element requiring proof of damage does not refer to proof of actual damages; in Missouri a party may

3

>    recover nominal damages if a breach is established and no actual damages are proven.

*Id*. at 935 (*citing Carter v. St. John's Regional Medical Center,* 88 S.W.3d 1, 12 (Mo. [S.D.] App. 2002)).

The Court concludes that summary judgment should be granted to Fabas on Count III of its COMPLAINT alleging a breach of contract. To be clear, however, the Court does not make any determination of the amount of damages sustained by Fabas or the impact, if any, of any alleged post-breach agreement between Fabas and Jet Midwest on the reasonable amount of such damages. The reasonable amount of Fabas' recoverable damages for the breach of contract (as limited by the Court's ruling on Jet Midwest's motion for summary judgment *infra*) will be a matter for a factfinder to determine at trial.

In its motion for summary judgment, Jet Midwest argues that partial summary judgment should be granted with regard to any claim by Fabas for lost profits. The parties are in basic agreement as to the law in Missouri. In a breach of contract case, lost profits cannot be recovered unless they are "made reasonably certain by proof of actual facts, with present data for a rational estimate of their amount." *BMK Corp. v. Clayton Corp.*, 226 S.W.3d 179, 195 (Mo. [E.D.] App. 2007). Under Missouri law then, the plaintiff must first establish the defendant's conduct actually caused some loss of profit. *Id*. If the plaintiff establishes the fact of lost profits, the plaintiff must establish the amount with "reasonable certainty." Id. Although not requiring exact calculations, Missouri law nonetheless requires "exacting proof" to sustain lost profits – *i.e.*, there must be a substantial basis for an award and speculation is prohibited. *Cole v. Homier Distribution Co.*, 599 F.3d 856, 866 (8th Cir. 2010); *Tipton v. Mill Creek Gravel, Inc.*, 373 F.3d 913, 918 (8th Cir. 2004); *Ameristar Jet Charter, Inc. v. Dodson International Parts, Inc.*, 155 S.W.3d 50, 54 (Mo. 2005) (*en banc*) ("In evaluating the sufficiency of evidence to

4

sustain awards of damages for loss of business profits the appellate courts of this state have made stringent requirements, refusing to permit speculation as to probable or expected profits, and requiring a substantial basis for such awards."). In sum:

> Under Missouri law, lost or anticipated profits of a commercial business are generally deemed too remote, speculative, and too dependent upon changing circumstances to warrant a judgment for their recovery. Lost profits may be recovered only when they are made reasonably certain by proof of actual facts, with present data for a rational estimate of their amount.

*EnerJex Res., Inc. v. Haughey*, 453 S.W.3d 830, 835 (Mo. [W.D.] App. 2014).

Fabas purchased the auxiliary power unit from Jet Midwest in order to lease it to another company, ABC Aerolineas S.A. DE C.V. ("Interjet"). The core of Fabas' lost profits claim relates to the lease agreement it had with Interjet. Specifically, Fabas alleges that it would have earned over $150,000 by leasing the auxiliary power unit to Interjet for six months. Fabas also claims that it would have made $350,000 in income from "exchange/lease of rotables" with Interjet.

The lease agreement between Fabas and Interjet provided for the minimum number of lease days to be "30 days from the date of shipment" of the auxiliary power unit. Moreover, the lease agreement obligated Interjet to pay a "minimum lease fee" of $20,000. At the time of entering into the lease with Fabas, Interjet was undertaking to have its own auxiliary power unit repaired. To that end, Fabas' corporate representative, produced pursuant to FED. R. CIV, P. 30(b)(6), testified that Interjet was "leasing [the auxiliary power unit from Fabas] until they were able to get their own unit repaired." Fabas' corporate representative further testified that he did not know when Interjet completed repairs on its own auxiliary power unit.

Based on the foregoing, the Court concludes that Fabas' damage claim based on a six month lease with Interjet and 1,200 hours of use of the auxiliary power unit by Interjet is too

5

speculative. The Court acknowledges that Fabas has produced a declaration from "Israel Patino-Fernandez" that describes Interjet's use of an auxiliary power unit it allegedly had to obtain after it concluded that the Jet Midwest auxiliary power unit was defective. However, the declaration gives no indication of the declarant's bases for this statement. Given the admissions of Fabas' corporate representative, this declaration does not cure the speculative nature of Fabas' damage claim regarding the loss of profits from a six-month lease.[2]

Fabas also claims damages based on its belief that the defective auxiliary power unit provided to Interjet resulted in Fabas losing out on future income from an exchange/lease business relationship with Interjet. Prior to the lease agreement involving the auxiliary power unit, however, Fabas had never done a rotable[3] sale or lease with Interjet. On February 5, 2015, though, Fabas received an email from Interjet indicating that Fabas "ha[d] been selected as the best option" to have a 2015 rotable exchange program with Interjet regarding 27 designated airplane component parts. In this lawsuit, Fabas claims that Interjet subsequently terminated this proposed exchange program (although there apparently are no documents reflecting such a termination by Interjet). Moreover, Fabas claims the termination was due to the defective auxiliary power unit obtained from Jet Midwest and provided to Interjet. However, the subject auxiliary power unit was found to be defective and rejected by Interjet on <u>June 3, 2014</u>.

It simply defies common sense (and reasonable inference) to conclude that Fabas lost out on the rotable exchange program <u>because of</u> the defective auxiliary power unit provided to

---

[2] This includes any claim by Fabas for the "average repair costs" for auxiliary power unit had it been leased for six months by Interjet.

[3] In broad strokes, "rotables" are component or inventory items that can be repeatedly and economically restored to a fully serviceable condition. In the aviation industry, this can provide for a servicing method in which an already-repaired equipment is exchanged for a failed equipment, which in turn is repaired and kept for another exchange.

6

Interjet in June of 2014, when Interjet did not even select Fabas for the rotable exchange program until February of 2015. The only way Fabas could even begin to satisfy its required causal showing would be to resort to the sort of speculation and conjecture prohibited under Missouri law.

The Court grants Jet Midwest's motion to summary judgment to the extent it seeks to bar Fabas from making any damage claim based on a lease agreement with Interjet continuing for six months and for any damage claims based on Fabas' alleged lost opportunity to participate in a rotable exchange program with Interjet.

In accordance with the foregoing discussion, it is

**ORDERED** that the Fabas' summary judgment motion on its remaining breach of contract claim [Doc. 58] is **GRANTED**. It is further

**ORDERED** that Jet Midwest's motion for partial summary judgment as to the claims asserted by Fabas for lost profits [Doc. 62] is **GRANTED**.

*/s/ John T. Maughmer*
**John T. Maughmer**
**United States Magistrate Judge**
